UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ANTHONY SMITH,

     Petitioner,

  -vs-

M. MAHER, Acting Superintendent,

     Respondent.

**DECISION AND ORDER
No. 04-CV-0404(VEB)**

_____

## INTRODUCTION

 Petitioner Anthony Smith ("Smith") filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in Monroe County Court on one count of criminal sale of a controlled substance in the third degree. The parties have consented to disposition of this matter by the undersigned pursuant to 28 U.S.C. § 636(c).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

 The conviction here at issue stems from Smith's sale of two "dime bags" of cocaine to an undercover police officer on October 17, 2000. On October 18, 2000, Smith was arraigned on the felony complaint with defense counsel present, who requested an adjournment for a preliminary hearing. This was scheduled for October 20, 2000, on which date Smith waived the matter to the grand jury. The grand jury returned Indictment No. 218/01 on April 13, 2001, charging Smith with criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third degree. The indictment was filed with the court on the same day, and the prosecution included therein a notice pursuant to *People v. Kendzia*[1] indicating that

---

   [1]  *People v. Kendzia*, 64 N.Y.2d 631, 638 (N.Y. 1985).

the People were ready for trial. The prosecution filed a second *Kendzia* notice with the Monroe

County Court and served a copy on Smith's defense counsel on April 20, 2001; however,

defense counsel averred that she did not receive the notice until April 24, 2001. At a pre-trial

hearing, the prosecutor conceded that the notice of trial readiness was actually date-stamped on

April 23, 2001.

On June 20, 2001, defense counsel for Smith moved pursuant to New York's so-called

"Speedy Trial" statute, Criminal Procedure Law ("C.P.L.") § 30.30, to dismiss the indictment

because the prosecution had not complied with its statutory obligation to be ready for trial within

six months of the commencement of the action.[2] The trial court (Connell, J.) denied the motion

on July 25, 2001. The court held that the time between October 20, 2000, when the case was

waived to the grand jury, and April 13, 2001, when the indictment was filed with the court, was

chargeable to the prosecution. The court stated that the prosecution's *Kendzia* notice filed on

April 23, 2001, fulfilled the requirements of C.P.L. § 30.30(1)(a). Monroe Count Supreme Court

Order at 1 (citation omitted), Respondent's Appendix ("Resp't App."), Exhibit ("Ex.") E at 29.

Smith's jury trial commenced in Supreme Court (Monroe County) (Fisher, J.) on March

4, 2002. The jury returned a verdict in which it acquitted Smith of the possession count and

---

[2]        Section 30.30(1)(a) provides that "[e]xcept as otherwise provided in subdivision three, a motion
made pursuant to paragraph (e) of subdivision one of section 170.30 or paragraph (g) of subdivision one of section
210.20 must be granted where the people are not ready for trial within: (a) six months of the commencement of a
criminal action wherein a defendant is accused of one or more offenses, at least one of which is a felony[.]" N.Y.
Crim. Proc. Law § 30.30(1)(a). Thus, C.P.L. § 30.30(1)(a) "requires dismissal of a felony indictment where the
People are not ready for trial within six months of the commencement of a criminal action. Compliance with this
statute is generally determined by computing the time elapsed between the filing of the first accusatory instrument
and the People's declaration of readiness[.]" *People v. Dearstyne*, 230 A.D.2d 953, 954, 646 N.Y.S.2d 1000 (App.
Div. 3d Dept. 1996). For purposes of that section, computation of the six-month period in §30.30(1)(a) is measured
in calendar months. *People v. Cortes*, 80 N.Y.2d 201, 208 n.3 (N.Y. 1992). The date of the commencement of the
action was October 18, 2000, when Smith was arraigned in Rochester City Court. Six calendar months from that date
was April 18, 2001.

convicted him of the criminal sale count. Smith was sentenced as a second felony offender to an indeterminate sentence of five to ten years.

On direct appeal, appellate counsel raised one claim–that the trial court erred in denying Smith's motion to dismiss the indictment based on the prosecution's failure to comply with the strictures of New York's Speedy Trial statute, C.P.L. § 30.30. The Appellate Division, Fourth Department, of New York State Supreme Court, unanimously affirmed the conviction. Leave to appeal to the New York Court of Appeals was denied.

Smith filed the instant habeas petition raising one claim–that his Sixth Amendment right to a speedy trial was violated. Respondent answered and interposed the defense of non-exhaustion with respect to Smith's sole claim. Smith then filed a motion to have his petition held in abeyance so that he could return to state court to exhaust his remedies with respect to a claim of ineffective assistance of appellate counsel premised on counsel's failure to assert a Sixth Amendment Speedy Trial claim on direct appeal. In this regard, Smith filed an application for a writ of error *coram nobis* in the Appellate Division which denied the application in an memorandum decision and order. Respondent's Supplemental Appendix ("Resp't Supp. App."), Ex. C. Leave to appeal to the New York Court of Appeals was denied.

Respondent answered the amended petition, and Smith submitted a reply to respondent's answering memorandum of law, disputing many of respondent's factual assertions. Smith recently made a motion to have this Court hold an evidentiary hearing on his claims.

For the reasons set forth below, the Court concludes that no hearing is necessary to resolve this matter. The request for a writ of habeas corpus is denied, and the petition is dismissed.

**DISCUSSION**

**Exhaustion and Procedural Default**

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that–(A) the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); *see, e.g., O'Sullivan v. Boerckel*, 526 U.S. 838, 843-44, 119 S.Ct. 1728, 1731 (1999); *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir.1994), *cert. denied*, 514 U.S. 1054, 115 S.Ct. 1436 (1995)."The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." *Daye v. Attorney General*, 696 F.2d 186, 191 (2d Cir.1982) (*en banc*), *cert. denied*, 464 U.S. 1048, 104 S.Ct. 723 (1984). This means that the petitioner must have alerted the state appellate court that a federal constitutional claim is at issue. *E.g., Grady v. LeFevre*, 846 F.2d 862, 864 (2d Cir. 1988).

Here, Smith's brief to the Fourth Department–prepared by appellate counsel–referred only to C.P.L. § 30.30, dealt only with state statutory ready-for-trial issues under C.P.L. § 30.30, and employed only state cases and state law analysis; there is no reference in the table of authorities or in the rest of the brief of to any federal case law or to the federal constitution. Clearly, the claim Smith raised in state court rested solely on state procedural grounds. C.P.L. § 30.30 requires only that the prosecution be ready for trial within a prescribed time frame, and not that the defendant actually be afforded a speedy trial. *See People v. Anderson*, 66 N.Y.2d 529, 498 N.Y.S.2d 119, 488 N.E.2d 1231 (N.Y. 1985) (stating that C.P.L. § 30.30, setting forth time limitations in which People must be ready for trial, addresses only problem of prosecutorial readiness, and is not a "Speedy Trial" statute in the constitutional sense). Because C.P.L. § 30.30

is merely a state law provision requiring the prosecution to be ready for trial, a § 30.30 claim does not raise a federal constitutional claim. *Accord, e.g.*, *Gibriano v. Attorney General of the State of New York*, 965 F. Supp. 489, 491-492 (S.D.N.Y. 1997) (denying habeas relief and noting that "Section 30.30 [of the New York Criminal Procedure Law] is a statutory time in which the People of New York must be ready for trial; Section 30.30 is not, as such, a statutory embodiment of the constitutional guarantee to a speedy trial."); *Rodriguez v. Miller*, No. 96 Civ. 4723(HB), 1997 WL 599388, at *2 (S.D.N.Y. Sept. 29, 1997) ("[A] C.P.L. § 30.30 claim has been held not to raise the federal constitutional speedy trial claim for purposes of a federal habeas petition."); *Jackson v. McClellan*, No. 92 Civ. 7217(JFK), 1994 WL 75042, at *2 (S.D.N.Y.  Mar.4, 1994) (holding that petitioner failed to fairly present constitutional speedy trial issue to state court where petitioner argued "entirely in terms of New York Statutory law [C.P.L. § 30.30]"). The conclusion is inescapable that Smith did not fairly present his federal constitutional speedy trial claim to the state court, and therefore it is not exhausted.

For purposes of satisfying the exhaustion requirement, a federal habeas court need not require that a federal claim be presented to a state court if it is "clear" that the state court would hold the claim to be procedurally barred. *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997) (quoting *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991) (in turn quoting *Harris v. Reed*, 489 U.S. 255, 263 n. 9, 109 S.Ct. 1038, 1043 n. 9 (1989)) (quotation marks omitted).  In such a case, a habeas petitioner does not have "remedies available in the courts of the State" within the meaning of 28 U.S.C. § 2254(b). *Grey v. Hoke*, 933 F.2d at 120. Claims that would face such a procedural bar are "deemed exhausted" by the federal courts. *E.g.*, *Reyes v. Keane*, 118 F.3d at 139; *Bossett v. Walker*, 41 F.3d at 828; *Washington v. James*, 996 F.2d 1442, 1446-47 (2d Cir.

1993), *cert. denied*, 510 U.S. 1078, 114 S.Ct. 895 (1994); *Grey v. Hoke*, 933 F.2d at 120-21.

Smith is in that predicament because he is barred from raising his federal constitutional speedy trial claim in state court. He has used the one direct appeal to which he was entitled, *see* N.Y. Court Rules § 500.10(a), and New York's collateral procedures are unavailable because Smith could have raised the claim on direct review but did not, *see* N.Y. Crim. Proc. Law § 440.10(2)(c).[3] Therefore, Smith has no further recourse in state court. *See* 28 U.S.C. § 2254(c); *Grey v. Hoke*, 933 F.2d at 120. Because he failed to raise his claim in state court and no longer may do so, his claim–although deemed exhausted–is procedurally defaulted. *Grey*, 933 F.2d at 120. To avoid the preclusive effect of such a procedural default, a habeas petitioner must "'demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice,'" *i.e.*, a showing of "actual innocence." *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 2564, 115 L.Ed.2d 640 (1991); *accord, e.g.*, *Lebron v. Mann*, 40 F.3d 561, 564 (2d Cir. 1994).

It does not appear to the Court that Smith explicitly has asserted cause and prejudice, but he did return to state court, during the pendency of this proceeding, in order to raise a claim that appellate counsel was ineffective in failing to frame the speedy trial claim in federal constitutional terms so as to properly exhaust the claim for purposes of federal habeas review. *See* Petitioner's Petition for a Writ of Error *Coram Nobis*, ¶¶ 24-41, Resp't Supp. App., Ex. A.

---

[3] Section 440.10(2)(c) of the C.P.L. states, in pertinent part, "2. Notwithstanding the provisions of subdivision one, the court must deny a motion to vacate a judgment when: . . . (c) Although sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to . . . raise such ground or issue upon an appeal actually perfected by him. . . ." N.Y. Crim. Proc. Law § 440.10(2)(c).

The Supreme Court has acknowledged that in certain circumstances counsel's ineffectiveness in failing properly to preserve the claim for review in state court will suffice to establish cause for a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 453, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000) (citing *Murray v. Carrier*, 477 U.S. 478, 489 (1986) ("[A] claim of ineffective assistance [must generally] be presented to the state courts as an independent claim before it may be used to establish cause of a procedural default.")). However, "[n]ot just any deficiency in counsel's performance will do[;]" rather, "the assistance must have been so ineffective as to violate the Federal Constitution." *Id.* (citing *Murray*, 477 U.S. at 489).

Here, Smith's claim of ineffective assistance of appellate counsel has been fully exhausted. Based on the Supreme Court's statements in, *e.g.*, *Edwards v. Carpenter*, the Court next must consider the claim of ineffective assistance of appellate counsel as a stand-alone claim; only if the failure to raise a constitutional Speedy Trial claim on direct appeal functionally denied Smith of his Sixth Amendment right to have the effective assistance of counsel may the ineffectiveness be said to constitute "cause" to excuse the procedural default. *See id.* For the reasons discussed *infra*, the Court cannot find that Smith was deprived of his right to the effective assistance of counsel based on appellate counsel's failure to raise a constitutional Speedy Trial claim on direct appeal. Thus, Smith cannot establish "cause" for the procedural default, and this Court need not reach the question of whether Smith can show prejudice. *See Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985) ("Since a petitioner who has procedurally defaulted in state court must show both cause and prejudice in order to obtain federal habeas review, we need not, in light of our conclusion that there was no showing of cause, reach the question of whether or not [petitioner] showed prejudice."). Furthermore, Smith has not asserted

that he is "actually innocent" of the charges on which he was convicted, so the "fundamental miscarriage of justice" exception has no application here. Accordingly, Smith cannot overcome the procedural default as to his Speedy Trial claim.

**Standard of Review**

Under the amendments to the federal habeas statute wrought by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a Federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it concludes that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

An "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." *Sellan v. Kuhlman*, 261 F.3d 303, 313 (2d Cir. 2001) (quotation omitted). Under the "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (O'Connor, J., concurring and writing for the majority in this part). The "unreasonable application" clause is applicable when "the state court identifies the correct governing legal principle from this Court'' decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. Under this standard, "a federal habeas court may not issue the writ simply because that court

concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. In order to grant the writ there must be "some increment of incorrectness beyond error," although "the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

## Merits of the Petition

**1.     Ineffective assistance of appellate counsel**

To show that his counsel's representation was ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984), Smith must establish that (1) the attorney's performance fell below an objective standard of reasonableness; and (2) the deficient representation prejudiced the defense. *See Strickland*, 466 U.S. at 687. The *Strickland* two-pronged standard applies equally to claims of ineffective assistance of appellate counsel. *E.g.*, *Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir. 1992), *cert. denied*, 508 U.S. 912, 113 S.Ct. 2347, 124 L.Ed.2d 256 (1993). This Court then must view the claim through the lens of 28 U.S.C. § 2254(d)(1) in order to determine not whether the state court was incorrect or erroneous in rejecting Smith's ineffective assistance claim, but whether it was "objectively unreasonable" in doing so. *Sellan v. Kuhlmann*, 261 F.3d at 315 (citing *Williams*, 529 U.S. at 409 (O'Connor, J., for the Court, Part II)).

The failure to raise a meritorious argument based on purely state law grounds may form the basis of a federal habeas petition alleging ineffective assistance of appellate counsel: "[t]he claim whose omission forms the basis of an ineffective assistance claim may be either a

federal-law or state-law claim, so long as the 'failure to raise the state . . . claim fell outside the wide range of professionally competent assistance.'" *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (quoting *Claudio v. Scully*, 982 F.2d at 805 (quoting *Strickland*, 466 U.S. at 690)).

Here, appellate counsel raised a single claim based on New York state's C.P.L. § 30.30(1)(a), which is commonly called the "Speedy Trial" statute. Section 30.30 is a statutory time frame in which the People of the State of New York must be ready for trial; Section 30.30 is not, as such, a statutory embodiment of the constitutional guarantee to a speedy trial. *People v. Anderson*, 66 N.Y.2d 529, 535, 488 N.E.2d 1231, 1235, 498 N.Y.S.2d 119, 123) (N.Y. 1985) ("Although CPL 30.30, like 30.20, is entitled 'speedy trial', and in large part serves the same purposes, the history of its adoption makes evident that it addresses only the problem of prosecutorial readiness, and is not a speedy trial statute in the constitutional sense[.]") (citations omitted). By contrast, Criminal Procedure Law Section 30.20 does embody the federal constitutional right to a speedy trial. *Id.* at 534; *accord, e.g.*, *Gibriano v. Attorney Gen.*, 965 F. Supp. at 491-92.

The Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial . . . . " U.S. Const. amend. VI. The Sixth Amendment speedy trial guarantee was not made applicable to the States until 1967, *Klopfer v. North Carolina*, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967), and it was not until 1972 that the Supreme Court attempted to define the limits of the Federal right, *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The New York Court of Appeals has stated that the speedy trial guarantee established by the Sixth Amendment to the Federal Constitution and by Article I, Section 6 of the New York State Constitution, and embodied in C.P.L. § 30.20 and

Civil Rights Law § 12, "is intended to ensure fair and humane treatment of an accused person by protecting him or her against prolonged imprisonment while awaiting trial, providing relief from the anxiety and public suspicion that accompanies a criminal or the dulling of memory the means of proving his or her innocence may be lost[.]" *Id.* (citations omitted); *accord, e.g., People v. Taranovich*, 37 N.Y.2d 442, 373 N.Y.S.2d 79, 335 N.E.2d 303 (1975) (citations omitted).

In *People v. Taranovich*, the Court of Appeals set forth five factors to ascertain if a defendant's Sixth Amendment right to a Speedy Trial have been denied: "(1) the extent of the delay; (2) the reason for the delay; (3) the nature of the underlying charge; (4) whether or not there has been an extended period of pretrial incarceration; and (5) whether or not there is any indication that the defense has been impaired by reason of the delay." *Id.* at 445, 373 N.Y.S.2d 79, 335 N.E.2d 303. The *Taranovich* factors essentially mirror the four-part inquiry outlined by the Supreme Court in *Barker v. Wingo* to determine whether a defendant's speedy trial right had been violated by prosecutorial delay: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker*, 407 U.S. at 530; *accord Doggett v. United States*, 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992) (noting that the Supreme Court has "qualified the literal sweep of the provision by specifically recognizing the relevance of four separate enquiries: whether delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result"). However, the New York courts have recognized that *Barker v. Wingo* standards are "less liberal" since in New York, the "failure to conduct a prompt prosecution, in a proper case, may require dismissal of an indictment even in the absence of prejudice to the defendant."

-11-

*People v. Staley*, 41 N.Y.2d 789, 791, 396 N.Y.S.2d 339, 364 N.E.2d 1111 (N.Y. 1977) (citing, *inter alia*, *People v. Blakley*, 34 N.Y.2d 311, 313 N.E.2d 763, 357 N.Y.S.2d 459 (N.Y. 1974) ("Absence of prejudice, however, while relevant under the *Barker* rules, has not been a factor to be considered under existing State rules.").

   In attempting to establish that appellate counsel's failure to raise a state claim constitutes deficient performance, it is insufficient for the petitioner to show "merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made." *Mayo*, 13 F.3d at 533 (citing *Jones v. Barnes*, 463 U.S. 745, 754 (1983)). Whether the neglected appellate issue is based on federal or state law, the burden rests on Smith to show "that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Id.*  After reviewing New York's case law and the statutory scheme set forth in C.P.L. § 30.20 and § 30.30, the Court finds a constitutional Speedy Trial claim was an "obvious" contender for inclusion in Smith's appellate brief; New York recognizes and protects a defendant's Sixth Amendment right to a speedy trial both statutorily and in its own constitution. The question is whether it also was a "significant" claim, which appellate counsel ignored while pursuing claims that were obviously weaker.

   On the facts presented here, there certainly was some delay (sixteen and one-half months) between the filing of the felony complaint (October 18, 2001) and the time Smith's trial commenced (March 4, 2002). In a case involving the abridgment of a defendant's constitutional right to a speedy trial under C.P.L. § 30.20, the court on appeal will consider the entire period from arrest to trial to determine whether or not the delay is improper. *See People v. Johnson*, 38 N.Y.2d 271, 379 N.Y.S.2d 735, 342 N.E.2d 525 (N.Y. 1975). As is generally the case with

claims whose resolution involves a balancing of multiple factors, it is often difficult to predict with certainty a party's likelihood of success on the merits; this appears to be true of constitutional speedy trial claims on appeal in New York State. For instance, the New York Court of Appeals held in *People v. Taranovich* that "[a] one-year delay between the alleged occurrence of a crime and an indictment for a class C felony, even when it results from prosecutorial inattention, in and of itself does not entitle a defendant to a dismissal of the indictment where there is no lengthy pretrial incarceration and no apparent impairment of his defense caused by the delay." 37 N.Y.2d at 447.  On the other hand, in *People v. Respress*, 195 A.D.2d 1053, 1054, 600 N.Y.S.2d 535, 537 (App. Div. 4th Dept. 1993), the Appellate Division held that vacatur was warranted when more than sixteen months elapsed from the filing of the felony complaint to the time of trial, defendant was incarcerated throughout that entire period, much of the delay was caused by the prosecution's failure to provide requested discovery materials, and there was an excessive and unexplained delay of six months before the first indictment.

The Court has reviewed the transcripts provided to it, and it is clear that the post-indictment delays in bringing this case to trial were not unexplained, unreasonable, or caused by prosecutorial neglect. In fact, by and large, the adjournments were at the behest of defense counsel. (Smith's conclusory, self-serving and unsubstantiated assertions to the contrary in his Traverse are belied by the record and are not entitled to any great weight.)

To review, on April 25, 2001, the case was scheduled for arraignment. The prosecutor noted that he had just gotten in contact with assigned counsel that morning and that there had been "some extended negotiations on [the case]." 4/25/01 Transcript ("Tr.") at 2. Defense

counsel explained that for some reason, she had not been informed of the indictment and had not had a chance to contact her client. *Id.* She requested an adjournment of at least one week to contact him. *Id.* The trial court noted that the letter sent to Smith informing him of the indictment had been returned as undeliverable; defense counsel indicated she believed that the court had the wrong address. *Id.* at 3. The trial court set the next arraignment date for May 7, 2001; defense counsel and the prosecutor agreed. *Id.* The prosecutor stated on the record that the People were ready for trial. *Id.*

On May 7, 2001, defense counsel appeared in court and stated that she was "at a loss to explain" why her client was not there. 5/7/01 Tr. at 2. She indicated that she had spoken with him after the last court appearance and explained to him about the indictment; she questioned as to whether he might be running late. *Id.* The proceedings adjourned for a while, and Smith eventually appeared in court, explaining that he had gone to the wrong courtroom. *Id.* at 4. Defense counsel waived a full reading of the indictment and entered a plea of not guilty on Smith's behalf. *Id.* at 4. The court asked whether the parties would like the case scheduled for a "conference or motion argument," and defense counsel requested a conference. *Id.* at 5. Smith did not voice any dissension to defense counsel's request for a conference.

On May 14, 2001, the parties appeared before Judge Connell, who indicated that counsel and he had had a conference in chambers and had "agreed to an adjourned date of June 20th for argument of motions." 5/14/01 Tr. at 2. Defense counsel agreed and, again, Smith voiced no opposition to this schedule. Indeed, this adjournment was requested by defense counsel in order to be heard on motions contesting the validity of the identification procedure, the lack of probable cause for the arrest, and the prosecutor's failure to comply with C.P.L. § 30.30(1)(a).

*See* 6/20/01 Tr. The trial court granted a hearing, and set the date for August 16, 2001. *Id.* at 8.

Smith did not object.

 The probable cause hearing was held, as scheduled, on August 16, 2001. At that time, the

trial court set the case down for trial on November 5, 2001. This date was set with the

defendant's consent. *See* 8/16/01 Tr. at 49. Again, neither defense counsel nor Smith expressed

any concerns about this.

 The next transcribed court hearing did not occur until February 8, 2002. Apparently, in

the interim, the trial had been rescheduled for March 4, 2002. 2/8/02 Tr. at 2. In addition, Smith

had been arrested on other charges. The trial court noted that there had been a conference on

February 6th and that

> besides the Criminal Sale of a Controlled Substance in the 3rd Degree and
> Possession 3rd that is . . . scheduled for trial on March 4th, the defendant has also
> picked up a new Criminal Possession of a Controlled Substance in the 3rd Degree
> and Promoting Prison Contraband, as well as a Burglary in the 2nd Degree and
> Grant Larceny in the 4th Degree, as well as an Unlawful Possession of Marijuana
> and a Criminal Contempt in the 1st Degree, possibly another misdemeanor
> associated with the police contraband case[.]

2/8/02 Tr. at 2-3. The trial court reviewed the outstanding offer to plead guilty to the burglary

charge in full satisfaction of the pending charges, and defense counsel indicated that Smith was

not interested. *Id.*  At defense counsel's request, the trial court then carefully reviewed the

"jeopardy that he face[d] int terms of sentencing" if he were convicted of all the pending

charges, given his predicate felon status. *Id.* at 5-8. The trial court recommended that Smith

"really think seriously of what the offer" was because of the number of charges against him and

the possibility of his receiving consecutive sentences. There was an off-the-record discussion

between defense counsel and Smith, after which defense counsel announced, "He would like to

think about it." Through defense counsel, Smith requested additional time to have "the opportunity to speak to his mother about this plea." *Id.* at 10-11. The trial court set the matter down for February 15th for disposition and kept the March 4th trial date. Smith now contends that he was not asking for more time to discuss the plea with his mother; rather, he contends that he was trying to retain new counsel. Whatever the reason, the fact remains that this last adjournment was asked for, and acquiesced in by Smith.

On February 15, 2002, the parties appeared in court again. Defense counsel informed the court that Smith was "not going to avail himself" of the pending plea offers and was "actually consulting other counsel." 2/15/02 Tr. at 2. Defense counsel noted that Smith was consulting an attorney later that afternoon, possibly to sign a retainer. Accordingly, she asked the court for another adjournment which was scheduled for February 27, 2002. On February 27th, the parties appeared again in court at which time defense counsel stated that the other attorney had declined the case and Smith was going to let her conduct the trial. 2/27/02 Tr. at 3. Trial commenced on March 4, 2002.

### *Application of the* **Taranovich** *factors*

With respect to the extent of the delay, the Court notes that sixteen months has been characterized as a "long delay" by the New York Court of Appeals in at least one case. *People v. Ganci*, 27 N.Y.2d 418, 422, 267 N.E.2d 263 (N.Y. 1971). Nevertheless, the length of the delay is not, in and of itself, dispositive. *See id.* (finding no constitutional speedy trial violation under C.P.L. § 30.20 where sixteen-month delay attributable to unavoidable court congestion). Looking at the reason for the delay in Smith's case, although the six-month delay prior to indictment was unexplained, there is no indication that any of the ten-month post-indictment

delay was caused by the prosecution's negligence or wilful misconduct. To the contrary, throughout this period, the prosecution consistently stated that it was "ready for trial." Moreover, all of the adjournments (except for the first, when Smith had not received notice of the indictment) were at the request of defense counsel, or at least with counsel's express consent and with no objection from petitioner. Furthermore, there were extensive plea negotiations occurring for much of this time. The third factor–the nature of the underlying charges–weighs in Smith's favor since the drug charges  against him admittedly were simple; it was not a case where the prosecution needed a great deal of time to gather evidence. As to the issue of pre-trial incarceration, the Court notes that for most of time period, Smith was free on bail on the charges at issue here–until the point he acquired a slew of additional arrests. With respect to the last *Taranovich* factor, there is no indication that the defense was impaired by reason of the delay. Smith asserts in his Traverse that he "had certain witnesses who could have testified at trial in his defense who, 17-months after his arrest, were not able to be located[.]" *Id.*, ¶58 (Docket No. 26). However, Smith has not provided the names of these supposed witnesses, let alone what their proposed testimony would be or how it would have assisted his defense. Such unsupported allegations plainly are not sufficient to justify a finding that Smith's defense was impaired.

Looking at the circumstances of Smith's case in light of the *Taranovich* factors and New York State's more expansive view of the constitutional right to a speedy trial, the Court nevertheless is of the opinion that there is no reasonable probability that the outcome of his appeal would have been different had appellate counsel raised a constitutional speedy trial claim. Indeed, the Appellate Division, in considering Smith's ineffective assistance of appellate counsel claim raised in the context of his *coram nobis* application, also considered the substance of his

constitutional speedy trial claim and found that it was without merit. Thus, it does not appear that Smith can demonstrate "prejudice" for the purposes of the *Strickland* test for ineffectiveness. Moreover, the Court can see that appellate counsel may have had a strategic reason for declining to raise a constitutional speedy trial issue; she may have felt that it was comparatively weaker since the bulk of the pre-trial delay was due to adjournments made with the petitioner's consent, and it does not appear that the post-indictment delay was due to any prosecutorial inertia or negligence. Thus, the Court cannot find that appellate counsel was professionally unreasonable in failing to raise such a claim on direct appeal. Although the Court does not find this to be an example of true ineffectiveness, the Court does note that it would have been better practice for appellate counsel to have asserted a constitutional speedy trial claim so as to preserve Smith's federal claim.

To the extent that Smith faults appellate counsel for failing to preserve his speedy trial claim under the federal constitution, the Court finds that he similarly cannot demonstrate that he was prejudiced by this omission. Given the likelihood that Smith's constitutional speedy trial claim would not have been successful when analyzed under New York's precedent concerning this issue, it almost certainly would have failed under the more stringent federal standard, as discussed below.

### *Application of the* **Barker** *factors*

The Court notes that both the Supreme Court and the Second Circuit have found that no constitutional speedy trial violation existed in cases in which the period between arrest and trial was even longer than the sixteen and one-half months at issue here. *E.g.*, *Flowers v. Warden, Connecticut Corr. Institution*, 853 F.2d 131, 133 (2d Cir. 1988) ("As to the first factor, length of

the delay, we note first that the 17-month delay here, while lengthy, is nevertheless considerably shorter than those in other cases where we have found no speedy trial violation.") (citing *United States v. McGrath*, 622 F.2d 36 (2d Cir.1980) (24 months); *United States v. Lane*, 561 F.2d 1075 (2d Cir.1977) (58 months)*; United States v. Cyphers*, 556 F.2d 630 (2d Cir.), *cert. denied*, 431 U.S. 972, 97 S.Ct. 2937, 53 L.Ed.2d 1070 (1977) (33 months); *United States v. Mejias*, 552 F.2d 435 (2d Cir.), *cert. denied*, 434 U.S. 847, 98 S.Ct. 154, 54 L.Ed.2d 115 (1977) (21 months); *United States v. McQuillan*, 525 F.2d 813 (2d Cir.1975) (26 months); *United States v. Lasker*, 481 F.2d 229 (2d Cir.1973), cert. denied, 415 U.S. 975, 94 S.Ct. 1560, 39 L.Ed.2d 871 (1974) (2 years); *United States v. Fasanaro*, 471 F.2d 717 (2d Cir.1973) (over 4 years); *United States v. Saglimbene*, 471 F.2d 16 (2d Cir.), *cert. denied*, 411 U.S. 966, 96 S.Ct. 2146, 36 L.Ed.2d 686 (1973) (6 years); *United States v. Schwartz*, 464 F.2d 499 (2d Cir.), *cert. denied*, 409 U.S. 1009, 93 S.Ct. 443, 34 L.Ed.2d 302 (1972) (4 1/2 years); *Barker v. Wingo*, 407 U.S. at 533-34, 92 S.Ct. at 2193-94 (over 5 years); *Rayborn v. Scully*, 858 F.2d 84, 89 (2d Cir.1988) (over 7 years); *United States v. Lane*, 561 F.2d 1075, 1078 (2d Cir.1977) ("The delay here was quite lengthy approximately 58 months or just under five years but nevertheless was shorter than that in other cases in which no Sixth Amendment violation has been found."); *United States v. Infanti*, 474 F.2d 522, 527 (2d Cir.1973) ("[The length of time from arrest to indictment was 21 months and from arrest to trial 28 months, neither extraordinary.").

The second *Barker v. Wingo* factor, the reason for the delay, likewise does not weigh in Smith's favor, for the reasons set forth in the discussion above. Nothing in the record indicates a willful attempt by the prosecution to delay the trial. *See Davis v. McLaughlin*, 122 F. Supp.2d 437, *443 (S.D.N.Y. 2000) ("Nothing in the record indicates a willful attempt by the State to

delay the trial. On the contrary, approximately three months of the delay appear to have resulted
from (1) petitioner's failure to appear; (2) the assignment of new defense counsel due to
petitioner's filing of a complaint against his attorney; (3) various adjournments for petitioner's
counsel to appear; and (4) adjournments to obtain psychological evidence. Other time was spent
by both petitioner and the State serving and responding to various pre-trial demands, and
conducting pre-trial conferences and hearings."); *United States v. McGrath*, 622 F.2d at 41 (no
speedy trial violation because, *inter alia*, "[t]here is no evidence of bad faith or deliberate
delays"); *United States v. Lane*, 561 F .2d at 1079 (no speedy trial violation despite some "rather
long unexplained delays" because there was "no indication that these [we]re attributable either to
deliberate procrastination or even negligent inaction on the part of the Government").

The third *Barker* factor, which looks at petitioner's assertion of his right, suggests that
the alleged deprivation was not serious since after the denial of the C.P.L. § 30.30 motion to
dismiss based on pre-indictment delay, defense counsel did not again raise an issue of pre-trial
delay. Smith now asserts that this evidences ineffectiveness on the part of defense counsel. To
the contrary, during the time at issue, counsel was making motions on Smith's behalf and
working diligently to secure a favorable resolution of the many criminal charges pending against
Smith; she was not "dragging her feet" or providing ineffective representation.

Finally, the Court turns to the last *Barker* factor, prejudice. In his Traverse (Docket No.
26), Smith contests respondent's assertion that prejudice is lacking since Smith was out of
custody during the time that he was awaiting trial and that he had not shown actual prejudice.
According to Smith, the sixteen-and-one-half-month delay prejudiced him in several ways. First,

he alleges that he was confined to the New York City[4] area under the conditions of his bail, he could not attend his maternal grandmother's funeral in Augusta, Arkansas with the rest of his family. Petitioner's Traverse, ¶57 (Docket No. 26). Second, Smith claims that his "father had secured a lucrative job offer for" him but because he could not leave the New York City area, "the promised position had to be given to someone else[.]" *Id.*, ¶56 (Docket No. 26). Finally, Smith states that he "had certain witnesses who could have testified at trial in his defense who, 17-months after his arrest, were not able to be located[.]" *Id.*, ¶58 (Docket No. 26).

The Supreme Court has explained that prejudice should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. The Supreme Court has identified three such interests: preventing oppressive pre-trial incarceration; minimizing the accused's anxiety and concern over the pending criminal charges; and limiting the possibility that the defense will be impaired. *Barker v. Wingo*, 407 U.S. at 532 (footnote omitted); *accord Doggett v. United States*, 505 U.S. at 654. Of these forms of prejudice, "the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." 407 U.S., at 532, 92 S.Ct., at 2193; *accord Doggett*, 505 U.S. at 654. The Second Circuit has explained that although a showing of prejudice is not a prerequisite to finding a Sixth Amendment violation, courts generally have been reluctant to find a constitutional speedy trial violation in the absence of "genuine prejudice." *United States v. Jones*, 129 F.3d 718, 724 (2d Cir. 1997) (citing *Rayborn v. Scully*, 858 F.2d 84, 94 (2d Cir. 1988)).

With respect to the instances of prejudice that stemmed from his travel restrictions, the Court observes that loss of an employment opportunity and the inability to attend family

---

[4]       This allegation does not make any sense since the indictments against Smith were pending in Monroe County (City of Rochester), New York.

functions do not appear to be the types of prejudice that the Sixth Amendment's Speedy Trial clause was designed to prevent. *See*, *e.g.*, *Barker*, 407 U.S. at 530; *United States v. Lai Ming Tanu*, 589 F.2d 82, 90 (2d Cir. 1978) (holding that district court had no basis for dismissing the indictment on due process grounds, any more than on Sixth Amendment Speedy Trial grounds, since prejudice, in the sense of a loss of evidence, was not shown; district court's decision was based on a "compassionate impulse" with regard to defendant's "ordeal in being unable to get a speedy trial in the state court, the inertia of the federal government, the two mistrials, her pregnancy and progressive physical deterioration in the presence of the trial judge"). Furthermore, as discussed above, Smith cannot show that his defense was impaired by the delay based on his unsubstantiated allegation that there were unnamed witnesses whose favorable testimony was lost due to the delay.  Accordingly, Smith cannot demonstrate the type of prejudice necessary to state a deprivation of the Sixth Amendment right to a speedy trial. Therefore, Smith likewise cannot show that he was prejudiced by appellate counsel's failure to raise a constitutional speedy trial claim on direct appeal.

## CONCLUSION

For the foregoing reasons, petitioner Anthony Smith's request for a writ of habeas corpus is denied and the petition is dismissed. Because petitioner has failed to make a substantial showing of a denial of a constitutional right, the Court declines to issue a certificate of appealability. *See* 28 U.S.C. § 2253.

**IT IS SO ORDERED**

/s/ *Victor E. Bianchini*

_____
VICTOR E. BIANCHINI
United States Magistrate Judge

DATED:      November 28, 2006
            Rochester, New York.